May it please the Court, my name is Tom Cohen. I wasn't approached to join this case until after the briefs were filed. And I took it knowing that appellate cases are won or lost on the briefs. I took it because I believe so strongly in underlying merits that I wanted to have a chance to try that at the district court level. I don't think there's really much doubt of what the controlling legal authority is here. It's Community Dental Services v. Taney at 282 Fed 3rd, 1164. And that apparently was an issue of first impression for the Ninth Circuit where they addressed the question of whether a client is responsible for his counsel's gross negligence. And at page 1170, the Taney court said, Failing to proceed with a client's case despite court orders to do so is virtual abandonment. I think it follows that abandoning your client on the eve of trial is virtual abandonment, is gross negligence. What do we do with the district court finding that your client, belated as he may be, was aware of the shortcomings of his counsel and that he didn't take appropriate action to remedy the situation? Your Honor, I think the evidence in the record does not support that. First of all, on the ‑‑ if you look at Mr. Anderson's declaration, at excerpts of record 187, it does not reflect that he knew that his attorney was not performing. In fact, she had performed fairly well. She defeated a motion to dismiss. She defeated some judgment motion. She took admission. She took numerous depositions, a few documents, hired a great expert. She was never sanctioned. She lost an important attorney‑client privilege matter regarding the notes that the songwriter had written and given to an attorney in contemplation of litigation. But if losing a discovery motion was grounds for firing an attorney, then none of us would be standing here today. His declaration says he did not know that Mr. Ortega was barred or precluded from testimony until after the case had been dismissed. He first heard about the dismissal or the potential dismissal on November 3rd, 2006, about two hours before the hearing on it, when his attorney called him, sort of giggled and said, the court is going to dismiss your case. He immediately called the court, left a message saying, I want to fire my attorney. What can I do to resolve this? He didn't receive a call back. And paragraph 10 and 11 of his declaration shows that he first learned of Ms. Keene's misconduct from the docket sheet, and that was not until after the case was dismissed when a friend of his told him about Pacer and how he could look at the docket sheet online. He's an unsophisticated client, civil servant living in Sacramento. He's not a general counsel or an insurance adjuster who follows the case. And his attorney told him the case was going well. So I don't think any of those facts support a finding that he knew what was going on. What about the district court's statement that, crediting the defense argument that two other attorneys were involved? Well, two other attorneys had helped in the discovery. One of them was his aunt. I'm sorry, I'm just going to find the actual details on it. First of all, and most importantly, neither of them were ever the attorney of record. Neither of them were ever served with a single pleading in this case. The appellee's brief talks about how they sent those two attorneys a letter saying, we're going to file a motion for sanctions. And indeed, I'm sure they did send that letter. But when they actually filed that motion for sanctions about a month later, those attorneys were not served. And more importantly, they lost the motion for sanctions. So not attorneys of record. I mean, I think the issue is whether or not the client was on any notice at all about his attorney's negligence. And given the fact that they'd had numerous continuances, he questioned her conduct at the mediation, you have notices to other attorneys, why wasn't the district court justified in saying, I'm sorry, given the high bar for reviewing a motion to reconsider the judgment, you lose. There aren't sufficient notes. What's wrong with that? I think it's a question of fact as to how much he really did know. Well, but then a question of fact is pretty bulletproof unless it's clearly erroneous on review. And here there's plenty of evidence in the record. I'm sure you're familiar with it. As early as July 17, he, quote, began to question her ability to properly represent him, close quotes. I mean, that's early on, and there's just an avalanche of information in his possession that seems to suggest that nothing is happening and nothing is happening correctly. And if it's a question of fact, it's awfully hard for us to penetrate that unless you can show that it's clearly erroneous. And here there seem to be material instances where the client is on notice. Well, there are mixed messages. The client's on notice that he didn't like the way she acted at the mediation on the same time, this declaration says. Questioned her ability to properly represent him. I mean, that is completely different from Taney. And Taney, as Judge Reinhardt said, there was no inkling until the bomb dropped. And here, I mean, it's loaded with information that he knew that something bad was going on. At the same time, he's being told the case is proceeding well. We've defeated summary judgment motions. We've defeated a motion to dispense. We've got these experts. You know, other than that, I can't tell you. But he's hearing that the case is going well. Well, the standard is, is it not, the question is whether he has the ability to control his counsel. And you're suggesting that he doesn't because he's not a lawyer. He has to rely and he gets fed some positive information along with the other. But isn't the issue whether he had the ability to control? That may be in part the issue. On the other hand, he is told, lied to by his attorney also in his declaration. We've got another attorney coming on board. That turned out to be a lie. When that lie came to light, she lied again. We've got another attorney coming on board. I wish all my clients had been quite so passive in this day and age. It seems to me that if we rule in your favor, we're drawing a line that says, unless the client tells the attorney deliberately screw up the case, the trial court's hands are tied. I mean, if we allowed all cases to stumble around like this, the court system would come to an end. I mean, isn't that what you're asking for? Unless the client is actively involved in trying to delay and screw up the case, there's not much that a trial court can do? No, I'm asking for factual evidence that the client knows that he's being abandoned. And I don't think that evidence is here. What he knows is that she acted strangely out of mediation. And to the extent, I hate to repeat this, that he wondered about her ability to represent him, phone calls, on and on and on, no answers in phone calls. I mean, they're all, you know, the little things that the court pointed to and what happened. I do. If every case proceeded like this, what would happen in our trial courts? Chaos. Well, luckily, they don't proceed this way. The problem is we've got an attorney who's lying to her client and who is also making progress in the trial court. That's, you know, there's a lot of things that she did that moved the case forward and towards a resolution. So you'd have us hold that the factual findings of the district court are clearly erroneous? I would. Do you want to save your remaining 40 seconds for rebuttal? Yes, Your Honor. Thank you. Ms. Ellison. Good morning, Your Honor. Susan Ellison for the appellees. I think Your Honors have cut right to a very important point as to the standard here. The standard only applies under Taneyan-Latshaw to a party who is himself blameless, who is facing extraordinary circumstances beyond his control. It was appellant's burden on the Rule 66 motion to establish that, and all we have is Mr. Anderson's declaration. And I think Your Honors have pointed out that as vague as it is in some respects about what he did or didn't know, what he says he did know is very damning indeed. He says that back in July, as you pointed out, he knew he needed new counsel in this case based on the way she conducted herself. He admits she was regularly seeking continuances in the case. He says he knew that she was unavailable for prolonged periods of time. During active stages of the case, she would just file ‑‑ she filed six notices of ‑‑ unilateral notices of unavailability in the period. He tells us she didn't return his calls for weeks at a time. He knows the most important ‑‑ more important thing, he knows he wants new counsel, but he knows she's interfering with his ability to get new counsel because Mr. Anderson tells us she wouldn't sign the new attorney's fee agreement. The appellees didn't know any of those things. All we knew was she was doing what she could to keep this case from going to trial. She got one continuance of the trial date, and then she was told twice she could have no more, and she was explicitly warned that if she didn't get her pretrial pleadings in, her Local Rule 16 pleadings in on time by a date certain, specified in an order, that the case would be dismissed. I would point out another important fact about this case that's different from both Taney and Latshaw. Taney involved a default judgment. Latshaw, this Court more recently, told us that we should look at the type of judgment we're dealing with under Rule 60b6 motion. In this case, we're dealing with a dismissal under Rule 16f. 16f specifically makes a default by a party or the party's counsel, a failure by a party or counsel to comply in putting in your pretrial order or being ready for a pretrial conference is grounds for the dismissal sanctions that were authorized here. So the drafters of Rule 16f in this case specifically wanted to attribute conduct of counsel to the party in this particular rule. That wasn't true in Latshaw. So for the same reason that the Rule 68 type of judgment that was endorsed in Latshaw for the same reason that that warranted a stringent analysis under 60b6, a Rule 16f judgment and a Rule 41b judgment for failing to prosecute your case and failing to comply warrants a very stringent analysis under what's already a very stringent standard and a very limited standard of review for this Court. Finally, I would point out that this is not a case of virtual abandonment. Up to the last minute, Ms. Keene was, the same day she's on the phone at the dismissal hearing when we're supposed to be having the pretrial conference, she's fast-filing to the Court oppositions to motions in limine. So I don't know whether or not this is gross negligence within the meaning of Tandy because it's just as consistent with a strategy to keep the case from going to trial. They know they need new counsel. They know they need new counsel who can chip in on the funding. They've told the Court that. And what she's done here is she's effectively, as the district court found, through her own conduct, she's trying to get continuances of the trial date that the Court has told her she's not going to get. Well, Larrabee, the ad, informed the defendants, if I'm correct, we have new lead counsel who was just retained and is out of the country. That was in July. Yeah, right, July. You know, what seems, we don't know what happened. And I would point out that neither Ms. Larrabee nor Ms. Keene nor Mr. Carlin have put in a declaration for Mr. Anderson for the plaintiffs on this case. And it, they clearly could have done those things. So, I mean, for the reply brief to suggest that the record doesn't show what Larrabee or Carlin knew at the end of the case or whether they were involved, they could have told us that. But all of this is certainly susceptible to an inference that they absolutely knew and they had gotten a new lawyer, but somehow the timing wasn't right. Well, I actually believe from Mr. Anderson's own declaration, he says that Ms. Keene, he doesn't say when, but Ms. Keene wouldn't sign the attorney fee contract. Mr. Anderson knows that his lawyer is getting in the way of new counsel, which is what he desperately needs in this case. Do we know who the new lead counsel is who was just retained and is out of the country? Not at that time because there's no time frame in it. There were several, there were a couple of different attorneys whose names were mentioned, but Ms. Keene in court hearings gave various reasons why she didn't have new counsel tied down. You know, at one point it was because they needed somebody to chip in on expenses. At another point it was because we had filed the sanctions motion and she thought the new counsel was scared off. We heard a lot of different things from Ms. Keene that are reflected in the hearing transcripts that are in the court's record. Those are my comments. Thank you, counsel. I think it's important to focus on the dismissal order itself and the fact that lesser sanctions were available. The standard review in a dismissal order does not reflect that the court considered the Henderson factors. We reviewed the record independently to see if the court abused its discretion. That's clear channel citing verdict versus bonds available. There are several things here. First of all, the defendants were not prejudiced by this. There's no loss of evidence. There's no increased difficulties in discovery. There's no greater opportunity for fraud. Anything they did in terms of pretrial filings can be reused on remand. I think Justice Anthony Kennedy, when he was sitting on the Ninth Circuit, summed it up in Hamilton versus Neptune Orient. He said, A district judge's understandable peak with attorney or client does not excuse his failure to consider alternative sanctions. While there's no requirement that every conceivable sanction be examined, meaningful alternatives must be explored. He suggested in that case that witness costs be imposed on the plaintiff to cure any prejudice caused by the delay. Another case, Shea versus Donahoe, which is a D.C. Circuit case, suggested disqualifying counsel from the case and ordering her to inform the client so he could select new counsel. Lesser sanctions were available. They were not addressed in the dismissal order, and I respectfully request that the case be reversed and remanded. Thank you. Thank you, counsel. Anderson versus Jackson will be submitted. Suarez versus Superior Court, California, submitted on the briefs, and we will hear argument now in Hoffman versus Citibank. Thank you.
judges: Trott, Thomas, Fisher